Argued January 10; affirmed January 17, 1939

STATE *v.* GREELEY ET AL.

(86 P. (2d) 437)

*Wm. P. Lord,* of Portland, for appellants.

*G. Russell Morgan,* District Attorney, of Hillsboro, for the State.

KELLY, J. On November 10, 1937, the grand jury of Washington county returned three indictments against Ray Gillespie, Wallace Webster and Edward Greeley charging that on the 20th day of October, 1937, said defendants committed the crime of assault and battery upon each of the three following named persons, Maynard Guy, William Forbis and Floyd Loomis respectively.

The three cases were consolidated and at the conclusion of the trial in the case wherein the assault and battery is alleged to have been committed upon said Maynard Guy, the court directed a verdict of acquittal as to defendants Gillespie and Webster.

As to the defendant Gillespie, a verdict of guilty was returned in the case wherein the crime is alleged to have been committed upon Floyd Loomis; while in that case a verdict of not guilty was returned as to defendant Webster.

As to the defendant, Webster, a verdict of guilty was returned in the case wherein the crime was alleged to have been committed upon William Forbis; while in that case a verdict of not guilty was returned as to defendant Gillespie. Greeley was found guilty in all three cases. All three defendants appealed from the judgments of conviction. Greeley died since his appeal was perfected.

On the afternoon of the day named in the indictment, viz: October 30, 1937, Forbis, Loomis and Guy had stopped at a tavern near Forest Grove known as "The Oasis". While there they drank two glasses of draught beer; and, as they were leaving the tavern, the uncontradicted testimony discloses that they were set upon and beaten.

The defendants did not appear in person at the trial, but were represented by the same attorney who prosecuted this appeal and argued the case in this court.

It is argued that there was not sufficient identification of the defendants Webster and Gillespie to sustain their convictions.

■ The son of the proprietor of the tavern, Lloyd Fournier, was present at the time of the affray and among other things testified as follows:

"Q. Now, did you know the defendant, Ed. Greeley?

A. Yes.

Q. How long had you known him.

A. Oh, since the first of the year.

Q. He had been out there before, had he?

A. Yes, he had been there before.

Q. You didn't know at that time Wallace Webster?

A. No.

Q. You have seen him since?

A. I saw him at the time, but I wouldn't know him if I saw him, I don't believe.

Q. You found out who he was at the time of the fracas?

A. Yes.

Q. How about Ray Gillespie?

A. Well, I knew who he was, but I didn't know what his name was at the time.

Q. You found that out at the time, did you?

A. Yes.

Q. So at the time of this fracas or immediately following it you knew all three of these fellows?

A. I wouldn't say, I knew Webster by sight.

Q. You might not know him if you saw him again?

A. Yes, I might not.

> Q. But you did see Webster out there that day?
> A. Yes."

Following the foregoing testimony the record discloses repeated reference to the three defendants by name in the questions and answers of Mr. Fournier concerning the events upon which the state relies in support of the criminal charges herein.

Maynard Guy testified that as the complaining witnesses, Forbis, Loomis and himself, Guy, left the tavern, Forbis was ahead, then Loomis, then Guy. After a brief colloquy, while Guy had his hands in his pockets, Greeley knocked Guy up against the window.

We quote from Guy's testimony:

> "Q. Did it knock you out?
> A. Yes, I was knocked, the birds were tweeting, so I guess I was out,—I don't remember—all I remember is just hitting the window, that is all I remember."

Witness Guy, upon regaining consciousness, went to another tavern, known to this record as John Hagen's place, a short distance away, to call the sheriff.

We quote from Guy's testimony:

> "Q. Let's see about that, before you came out of John Hagen's these three defendants were gone?
> A. Yes, sir.
> Q. Now, where do you recall last seeing the defendants, taking them one by one.
> A. Well, I saw them, two of them about last Saturday.
> Q. No, I mean at the time of the fight.
> A. At the fight?

Q. Yes.

A. I never seen them any more after.

\* \* \* \* \*

Q. You say you seen one or both of those, Gillespie or Webster since that fight?

A. I seen Greeley and Gillespie last Saturday on the street.

Q. You knew Greeley at that time, did you?

A. Yes, sir.

Q. Did you know Gillespie at that time?

A. I didn't know him personally; I knew of him.

Q. Had you ever seen him before?

A. Yes.

Q. Have you seen him since?

A. Yes, sir.

Q. How many times have you seen him since the affair?

A. Oh, I have seen him about four or five times.

Q. Did you ever see him when you were in talking with Floyd Loomis?

A. I never have only once, that was at the smoker.

Q. When was the smoker?

A. I don't know exactly the date, it was over there at Pacific University.

Q. Well, about when.

A. Well, it must have been a month ago.

Q. Now, I don't want to have any confusion about the situation; did you know Webster at the time of the affair?

A. I had seen him before up at the Union Hall there in Forest Grove.

\* \* \* \* \*

Q. \* \* \* \* \* \* you and Gillespie and Webster and Greeley all belong to the same union?

\* \* \* \* \*

A. We certainly did.

Q. (By Mr. Morgan.) You know them by sight, you know Greeley by name and sight, as I understand it from that?

A. Yes sir.

Q. Did you know Gillespie by name and sight from that?

A. Yes sir.

Q. And how about Webster?

A. I knew him, too.

Q. Knew him by sight as well as by name?

A. Yes sir.''

Floyd Loomis testified that upon three subsequent occasions he had seen the man who assaulted him and upon one of those occasions, that is at a smoker, the man was pointed out to Loomis by Maynard Guy as Ray Gillespie.

It is true that Loomis was unable to say who actually hit him in the back but there is evidence of an assault upon Loomis by the man identified at the smoker by Guy as Gillespie and also that Gillespie and Greeley were acting together in the attack upon Loomis.

We quote from Loomis' testimony:

''Q. (By Mr. Morgan.) Do you know if this same man, Ray Gillespie, was the one that hit you, actually hit you in the back?

A. No.

Q. Did he touch you as he was swinging around at you?

A. Oh, yes, he brushed me here and there.

Q. But you don't know, as I understand, that he was the fellow that hit you in the back?

A. No.

Q. Do you know whether it was Ed Greeley that hit you in the back.

A. No.

Q. Do you know whether it wasn't he.

A. No, I don't.

Q. Well, how soon did you get hit in the back after Greeley took after Forbis.

A. Just about five seconds."

As to the identification of the assailant of Forbis, other than Greeley, Forbis testified that he was of ruddy complexion, rather thick lips and that his hair had a reddish tinge.

Witness Guy testified that defendant, Webster, was "kind of red complected, red haired, fairly tall." Guy also testified that he thought Webster's lips were a little thick.

We have purposely omitted any further reference to Greeley than such as is necessary to make the statement of facts intelligible. *"Mors omnia solvit."*

Suffice it to say, that there is sufficient evidence of the identity of defendants, Webster and Gillespie, as the assailants of the respective complaining witnesses in suit to support the verdicts.

Defendants state in their brief that about the time, the complaining witnesses were leaving the resort known as the Oasis, the three defendants came in. "Greeley and Webster each took a glass of beer, and Greeley thereupon engaged Maynard Guy in conversation. It seems that Mr. Greeley and Mr. Guy were casually acquainted, but none of the Forbis party was acquainted with Gillespie and Webster, and had never seen either of these men before."

This clearly establishes in this court that the three defendants were at the scene of the alleged crimes as claimed by the state. Their identity in that respect is thus cleared of all doubt upon this appeal.

■ It is further argued that reference in his argument to the jury by the district attorney to recent "chaotic conditions" in very many places constituted misconduct requiring a reversal. We think that the only result of such comment would be to quicken the jury's sense of duty. This conclusion was reached in another case with respect to the district attorney's statement, "* * * if you ladies and gentlemen as jurors, after taking an oath to try the case under the law and the evidence are going to put your stamp of approval upon performances such as this in public hotels and public thoroughfares, we may, all of us, resign ourselves to confusion and finally to bloodshed." *State v. Black,* 150 Or. 269, 284, 285, 289, 290, 42 P. (2d) 171, 44 P. (2d) 162. Confusion and bloodshed are terms more specific than the term chaotic conditions. We think no error was committed in permitting such argument.

Error is predicated upon the following instruction given by the trial court:

"The Court: The law provides that a defendant when charged with a misdemeanor as in this case may appear by counsel and he need not appear in person. Such failure to appear on the part of the defendant can only be considered by you on one phase of this case, that is, it may be considered by you in connection with all the other evidence in the case in determining the identity of the persons alleged to have committed the particular act alleged in the indictment; it may be considered only for what assistance it may be, if any, upon the question of identity. Their failure to appear is not to be considered by you for any other purpose or in any other connection. It does not relieve the State from proving their identity or that the particular defendants charged committed the act with which they are charged, and before you would be justified in convicting any defendant on any particular charge you must be satisfied

beyond a reasonable doubt that he is the particular defendant who committed the act or aided or abetted in its commission.''

In *State v. Black,* supra, speaking through Mr. Justice ROSSMAN, this court said:

''We know of no reason why the district attorney could not rightfully comment upon the defendants' absence if his comment on that subject was germane to any issue awaiting the jury's determination. Apparently identity was one of the main issues, if not the only issue in the circuit court. Had the defendants been present this issue could have been speedily settled. The state's witnesses, instead of describing at length clothing and physical features, could have made their identifications by looking at the defendants. That, apparently, was the proposition upon which the district attorney was commenting.''

■ This is a clear recognition that defendant's absence from the courtroom was germane to the issue of their identity and hence proper to be considered upon that issue by the jury. The above quoted instruction merely declares that rule and restricts the effect of defendant's absence to that single question. The trial court committed no error in giving such instruction.

■ The last ground urged for reversal is that the indictments fail to state facts sufficient to constitute the crime of assault and battery. These indictments conform to the form of indictment for that offense set forth in the code and it is settled law that such indictments are sufficient.

■ As stated, the brief of defendants asserts that at the time the alleged crimes were committed defendants were at the scene thereof. Both in their brief and the oral argument of their attorney in this court, their presence then and there is treated as a fact, but counsel

for defendant strenuously urges that the affair was simply a minor altercation resulting from the effect of "guzzling beer" and frequenting a beer saloon. Assuming this premise, it is contended by defendants' counsel that the penalty imposed, of imprisonment in the county jail for three months, is grossly disproportionate and excessive. The vice of this contention lies in the fact that the record does not support the assumed premise that the offense, at most, was only a minor infraction of the law. The record discloses an unwarranted, cowardly and brutal attack by the three defendants upon the three complaining witnesses who were where they had a right to be and who while off their guard and unprepared to defend themselves, were thus unexpectedly set upon and beaten. The record discloses that on that day one of the complaining witnesses had drunk but three glasses of beer—one earlier in the day and two at the Oasis, while the other two had taken only the two drinks which were served at the Oasis. This dissipates the thought of drunken reveling on the part of the complaining witnesses.

What showing the defendant might have made to the contrary is not known to us nor can it be surmised, because they have chosen to refrain from presenting any evidence either by means of their own testimony or that of other witnesses.

No error appearing, the judgments of the circuit court are and each of them is affirmed.

RAND, C. J., and ROSSMAN and BEAN, JJ., concur.